David R. Flood
915 L. St. 292
Sacramento, CA. 95814
Telephone (916) 607-6197



FILED
JAN 1 4 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA



2:08 - CV - 0 0 9 1 GEB JFM PS

| | |
|---|---|
| DAVID RODERICK FLOOD, an individual, on behalf of himself, the state of California and all others similarly situated therein | Case No. _____ |
| | Judge: _____ |
| Plaintiff | Dept. _____ |
| vs. | MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| NATIONAL FOOTBALL LEAGUE NFL OWNERS OAKLAND RAIDERS NFL PROPERTIES NFL FILMS REEBOK INC. | Date: _____ |
| | Time: _____ |
| | Dept. _____ |
| Defendants | |
| | Complaint filed: _____ |
| | Trial Date: _____ |

## I.

## INTRODUCTION

Plaintiff DAVID RODERICK FLOOD initiates this motion seeking certification of a "plaintiff class" of the state of California for mental anguish, pain and suffering, chapter 1 and 3 Sherman Act violations, several California civil business code violations, and irreparable harm for the failure of the National Football League to honor an economic obligation to professional football fans of this state and the 50 other continental United States as promised by the NFL commissioner, Pete Rozelle in 1966, whose false statements that none of the existing 23 league franchise teams then would relocate away from any of their traditional fan base cities, and that 50,000 seat stadiums were sufficient for professional football's needs. Because of the National Football League/franchise owners' illegal restraint of trade conspiracy and acts of relocating professional football franchises to other parts of the United States, this resulted in a breach of a verbal contract/contempt of (with) Congress, and negligent unrestrained efforts to immediately rectify the situation after the first illegal franchise relocation occurred (New York Giants 1971), within the state of New York where the National Football League's headquarters are located. Their failure to do so resulted in a continuous breach of the contract by NFL franchise owners and wave of team relocations that continued unabated from 1971-1995, with two of California's professional football teams—the Los Angeles Rams and Oakland Raiders—following suit. The proposed class consists of in excess of a million California state resident/fans representing subclasses of the National Football Conference Western Division (Los Angeles Rams) and the American Football Conference Western Division (Oakland Raiders), and who were also injured by the relocation loss of their favorite teams outside the state of California. Oakland's NFL franchise has since repented and returned to their initial fan base city

of Oakland, California after an illegal franchise move to Southern California (See page 13 & 14 of civil brief refuting Supreme Court's doctrine that the NFL and subsidiaries cannot conspire—Sherman Act violation—then "The Smoking Pigskin," pages 19-23).

I.

The Plaintiff representing the "plaintiff class" prays for the Court to certify the "entire class" based on the class being so numerous that joinder of all members would be impractical.

II.

There are legal questions and facts that are common to the class members as to whether they are entitiled under violations of California Business and Professions Code 17203, 17204; California civil codes 1752, 1770, 1780, and 1781 to any monetary compensation because of the National Football League/franchise owners' unfair business practices and violations of Chapter 1 and 3 of the Sherman Act, which prohibits conspiracies and restraints of trade.

III.

The claims or defenses of the representative parties are typical of the "entire class."

IV.

The Class representative and counsel representing the "entire class" will fairly and adequately represent the classes' interests.

V.

The National Football League and franchise owners have refused to act on grounds directly applicable to the "entire class."

VI.

There are more important common legal questions and facts in this case than questions that affect only individuals not psychologically connected with professional sports/in this civil case pertaining to professional football.

## VII.

This class action will be more efficient than having many individual lawsuits.

## VIII.

A. NATURE OF CLAIMS AND FACTUAL OVERVIEW

A Sherman Act violation prohibiting conspiracies and restraints of trade involving the National Football League and franchise owners occurred initially when the NFL commissioner, Pete Rozelle in 1966, provided members of Congress with false statements stating that none of the existing 23 franchises would relocate outside of their traditional fan base cities, and that 50,000 seat stadiums were adequate for pro football's needs as a prerequisite to receiving the antitrust exemption from them, followed by the New York Giants and several other illegal team moves beginning in 1971.

VIOLATION # 9 OF THE CALIFORNIA LEGAL REMEDIES ACT—Advertising services with the intent not to sell them as advertised to the public—required the National Football League commissioner—Pete Rozelle—when he spoke before members of Congress in 1966 and said that no team movements would occur prior to obtaining the antitrust exemption, and that 50,000 seat stadiums were sufficient for professional football's needs, became a matter of public interest to the plaintiff/plaintiff class—people of the state of California—and when the verbal contract with Congress and economic obligation with the plaintiff/plaintiffs was breached, the entire class was irreparably harmed.

VIOLATION #14: Representing that a transaction confers a remedy, which it actually does not have, which is prohibited by law. The National Football League commissioner stated that if the antitrust exemption was not granted that franchise moves and failures would occur within a matter of years. Franchise moves began, even with the antitrust exemption, beginning in 1971.

-3-

VIOLATION #17: Representing that the consumer will receive an economic benefit if earning of the benefit is contingent on the NFL first receiving the antitrust exemption. The National Football League committed fraud after receiving the antitrust exemption from Congress because the commissioner knew beforehand what was going to take place—illegal team relocations-- even with the antitrust exemption granted from Congress.

VIOLATION #18: Misrepresenting the authority of a representative to negotiate the final terms of transaction with a consumer. The NFL commissioner breached a verbal contract with Congress and an economic obligation with professional football fans of the state of California when he allowed the team owners to disregard the precepts/promises stated to Congress, prior to the issuance of the antitrust exemption from them.

CONCLUSION

Based on the foregoing, plaintiff respectfully requests that the Court issue an order granting certification of the class and subclasses as described in this motion.

Dated January 7, 2008          David Roderick Flood
                               Pro Se litigant for West Coast Sports & Entertainment
                               and "plaintiff class" —people of the state of California

                               By: /s/ David R. Flood
                                   David R. Flood

-4-