IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA



FILED
MAY - 1 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

David R. Flood
915 L. St. Suite 292
Sacramento, CA. 95814
Telephone (916) 607-6197

DAVID RODERICK FLOOD

    Plaintiff

v.

NATIONAL FOOTBALL LEAGUE
NFL OWNERS
OAKLAND RAIDERS
NFL PROPERTIES
NFL FILMS
REEBOK INC.

    Defendants

Case No. 2:08-CV-0091 GEB JFM PS

John F. Moulds
United States Magistrate Judge

(PS) Flood v. National Football League et al      Doc. 11

PLAINTIFF'S MOTION FOR LEAVE TO FILE AN
"AMENDED (SUPPLEMENTAL) COMPLAINT"

The Federal Rules of Civil Procedure provides that a party may amend his or her pleading once as a matter of course of any time before a responsive pleading is served. Plaintiff pro se David R. Flood hereby moves the Court pursuant to Rule 15 (a) and (d) of the Federal Rules of Civil Procedure, for leave to file and "amended (supplemental) complaint," which sets forth trans-actions, occurrences, or events that have happened since the date of the original pleadings. The standards of district courts in ruling on a motion to amend or supplement should ONLY BE DENIED where good reason exist that would PREJUDICE THE DEFENDANTS (Franks v. Ross, 313 F. 3d 184 (4th CIR 2002). Therefore, leave to a supplemental pleading SHOULD BE

1

FREELY GIVEN WHEN THE SUPPLEMENTAL FACTS CONNECT IT TO THE ORIGINAL PLEADING (Quaratino v. Tiffany & Co. F 3d 58, 66 (2d CIR 1995).

BACKGROUND

On January 14, 2008 plaintiff filed a civil complaint seeking Forma Pauperis status in order to qualify for federally designated legal counsel to represent himself and the "plaintiff class"—people of the state of California, in a Sherman Act/Civil tort violation case involving fraudulent commercial speech/advertising and promotions, along with the promotion of a fraudulent generic de facto secondary meaning trademark which also involves the defendants. Although the plaintiff stated the nature of his claims and factual overview in his complaint, including the jurisdiction and authority to claim his civil rights, the Court denied his motion for class action certification stating that a pro se litigant cannot ordinarily represent the interests of a class (Mcshane v. United States, 366 F. 2d 286 (9th Cir. 1966). Plaintiff reviewed the case and discovered that the plaintiff McShane's case was dismissed for lack of listing jurisdiction and that he failed to disclose authority for bringing his claims against the United States. The plaintiff in his complaint listed the jurisdiction and authority to state and represent his claims, and also listed the regulations the defendants violated that would directly advance the government's interests for granting his case "class action" status. Their case reference lacked merit in referring to him. Notwithstanding, the plaintiff was construed as an individual litigant after his Forma Pauperis application/plaintiff class representation was denied in March of 2008. In this case the plaintiff discloses the unfair business practices of the National Football League and their subsidiaries beginning in 1966 when the NFL commissioner then, Pete Rozelle, approached members of the 89th Congressional Committee seeking immunity from antitrust laws (the Sherman Act), which prohibits monopolies, conspiracies, and restraints of trade in commerce   and

2

trade. The focal point of the National Football League's fraudulent business practices were discovered when the commissioner gave false statements under oath to members of Congress that if an antitrust exemption was granted to the League, that none of the existing franchises would re-locate from their traditional fan bases and that 50,000 seat stadiums were proficient for professional football's needs. Once the antitrust exemption was granted based on these stipulations, these promises were breached by the franchise owners beginning in 1971, and continued through 1995, when the Los Angeles Rams and Oakland Raiders were allowed to carry out these restraint of trade practices to the derision of their fan base cities, and that they have been knowingly marketing a fraudulent generic de facto trademark since the Oakland Raiders of the old American Football League joined the NFL. These deceptive business practices have been carried out inconspicuously and unchallenged for decades and the plaintiff seeks to show the Court how these unfair business practices continue. Like the original complaint, the plaintiff will show how the supplemental complaint connects with the unfair/ deceptive business practices of the National Football League.

NEW OCCURRENCE FEBRUARY 2008

Lawyers for former National Football League player Willie Gary, filed a complaint in Louisiana District Court against the New England Patriots alleging that they obtained fraudulent access to the St. Louis Rams' game plans by illegally video taping their practice sessions prior to the 2002 Super Bowl. Further evidence of fraud was verified when a former employee of the Patriots went public to attest to the fact that his team engaged in unfair competition, and he alluded to the media that the

3

National Football League knew of the activity going on for at least five years from the year of when the illegal video taping first began. The matter subsequently drew interest from members of the Senate Judiciary Committee—Sen. Arlen Specter (R-PA) and Sen. Patrick Leahy (D-Vermont). Letters from Sen. Specter's office to Commissioner Goodell, sent to arrange for a meeting about the tapings, went unanswered between the months of Nov. to the beginning of Feb., until a meeting was finally scheduled for after the 2008 Super Bowl. Once the meeting convened on February 6, 2008, subject of the tapes were brought up, which the commissioner explained were destroyed once the news of a leak had reached the headlines. During the meeting, no report of a thorough written investigation of the matter was ever handed over to Sen. Specter, and in his words he was quoted as saying, "The commissioner's explanation as to why he destroyed the tapes does not ring true." (Goodell meets with Sen. Specter about Spygate, ESPN.COM NEWS SERVICES). This incident seriously raises questions about the integrity and legal business activities of the National Football League that not only undermines and hurts the fans who support the NFL, but it also leads the plaintiff to believe that this incident confirms that the League took affirmative steps to prevent the public from ever finding out about the illegal video taping, by instituting a strict code of silence between the conspirators. It was only after the New England Patriot's employee's firing did this information surface, along with Mr. Gary's story, which exposes the self-concealment standard of (fraudulent concealment) by the 2nd Circuit Court—York v. Hendrickson Brothers Inc. This supplemental occurrence connects to the original pleading of the plaintiff's case. Without designated counsel and class action certification, the plaintiff hereby respectfully requests, without prejudice, that the Court grant leave to file the "amended

4

supplemental complaint" and to add James Miller III, former chairman, Federal Trade Commission; David J. Sams, Chief administrative Trademark Judge, Trademark Trial and Appeals Board; and William E. Kovacic, Federal Trade Commission as defendants to this action and to answer to request for admission. Rule 36 1 (a) of Federal Rules of Civil Procedure state that a party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of facts, the application of law to fact, or opinions about either; and persons may be added in new events (Griffin v. County School Board of Prince Edward County 377 U.S. 218 (1964). Adding these defendants to this action will promote a complete adjudication of the complaints plaintiff has with the parties without prejudice.

Dated: April 30, 2008

Respectfully submitted,

David R. Flood
Pro Se litigant
West Coast Sports & Entertainment

5

# Leak played into decision to destroy tapes

February 1, 2008 2:07 PM

*Posted by ESPN.com's Mike Sando*

Commissioner Roger Goodell said the league decided to destroy all known evidence relating to Spygate after some of the video in question turned up on television. "We thought we had locked it up and it got out five days later," Goodell said. "That was one of my concerns. We thought we had a chain of command that would not have been broken. ... Unfortunately, that weekend it appeared on television and we were disappointed in that."

*Super Bowl XLII, Roger Goodell*

Sort comments by: **Most Recent** | First Posted



0 / 1500

POST COMMENT

*Member comments together with Member Names may be used on TV and other ESPN media platforms.*

**Comments (1-3)**

**skybu83470** (3 months ago)   Report Violation | Ignore User

I wonder if they ever thought that maybe the leaked tape didn't come from the videos the NFL had in possession but from an outside source? This all sounds really fishy from me. Or, maybe Goodell just has no common sense.

**blrenz424** (3 months ago)   Report Violation | Ignore User

NEW ENGLAND There's a credibility issue here,"

http://myespn.go.com/blogs/hashmarks/0-5-265/Leak-played-into-decision-to-destroy-tape...

# MASTER SETTLEMENT AGREEMENT AND PROPOSED FINAL JUDGEMENT IN ADDITION TO PRAYER FOR RELIEF

I. Restitution for the plaintiff's pain and suffering, mental anguish, irreparable harm in the form of $2.5 billion dollars or a NFL league/California State owned sports stadium with an endowment fund in place for monies to go to a charity of plaintiff's choice; an award of an expansion pro football team; and 2 pre-season games and 4 season games of the Oakland franchise to be played in a stadium capable of holding 50,000 fans at plaintiff's place of residence by the 2008 pro football season to satisfy compensatory damages.

punitive and all other damages.

II. Restitution to the plaintiff for all counts in his complaint, irreparable harm, mental anguish, pain and suffering, and fraudulent advertising over a 46 year period against all the defendants, plus disgorgement of profits, beginning in 1971 for a portion of those profits during that time period in the form of $25 million U.S. dollars.