FILED
JUN 27 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RODERICK FLOOD on behalf of himself and West Coast Sports & Entertainment<br><br>Plaintiff<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE<br>NEW YORK GIANTS<br>NFL PROPERTIES<br>NFL FILMS<br>REEBOK INC.<br><br>Defendents | Case No. 2:08-CV-0091 GEB JFM PS<br><br>John F. Moulds<br>United States Magistrate Judge<br><br><br><br>"AMENDED COMPLAINT" FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF |

1. Plaintiff DAVID R. FLOOD brings this cause of action under 5(a) of the FTC Act, 15 U.S.C. 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, section 12(a) of the FTC Act, 15 U.S.C. 52(a) prohibiting the false dissemination of any false advertisement in or affecting commerce for the purpose of inducing the purchase of, in this civil case services to secure (1) injunctive and other equitable relief (2) compensatory damages; punitive damages; treble damages; and disgorgement of profits from the defendants for engaging in deceptive business practices and false advertising in connection with the marketing of the National Football League and a fraudulent generic de facto secondary meaning trademark, in violation of the following Federal Trade Commission and Commerce and Trade statutes: 15 U.S.C.

1

(PS) Flood v. National Football League et al    Doc. 13

section 53(a); Title 15 Commerce and Trade Chapter 22—the Lanham Act sections 1120, 1125, 1052(a) (e) and 1064 paragraph 3; Title 15 Commerce and Trade Chapter 1 section 1 (illegal restraints of trade); 14 Clayton Act 15 U.S.C.24; 4 Clayton Act 15 U.S.C. 15; 16 Clayton Act 15 U.S.C. 26; and Commerce and Trade 15 U.S.C. 57(b).

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over the plaintiff's claims pursuant to 15 U.S.C. 45(a), 53, and 28 U.S.C. 1331.

3. Venue in the Eastern District of California is proper under 15 U.S.C. 53, AND 28 U.S.C. 1391 a-c.

## THE PARTIES

4. Plaintiff David R. Flood is President and Chief Executive Officer of West Coast Sports and Entertainment Inc., with its registered address located at 915 L. St. PMB-292, Sacramento, California, 95814. The company promotes sports and entertainment events for charities and the public in the Sacramento Central Valley.

5. Defendant the National Football League is a major professional sports league in the United States with 32 teams; its headquarters are located at 280 Park Ave, #12 New York, N.Y. 10017.

6. Defendant New York Giants is a professional football organization located at Giants Stadium, East Rutherford, N.J. 07073.

7. Defendant NFL Films is a subsidiary of the National Football League, and they are located at 1 NFL PLZ. Mt. Laurel, New Jersey 08054.

8. Defendant NFL Properties is a subsidiary of the National Football League, and they are located at 280 Park Ave. #12 New York, NY. 10017.

9. Defendant Reebok Inc. is a sports merchandise corporation subsidiary of the National Football League. They are located at 1895 J. W. Foster Blvd., Canton, MA. 02021.

## COMMERCE

10. The acts and practices of the defendants, as alleged herein, have and are still affecting commerce, as commerce is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44.

## DEFENDANTS' COURSE OF CONDUCT

11. In defiance of the precepts spoken to members of the 89th Congressional Committee of Congress, that none of the existing 23 franchise (single entity) member teams of the National Football League would re-locate outside of their traditional fan base cities, and that the 25 stadiums in which those teams competed in at (50,000) seat capacity were sufficient for pro football's needs spoken by NFL Commissioner Pete Rozelle in 1966, as a contingency for Congress to grant the league a limited antitrust exemption pertaining to monopolies. The New York Giants as a co-defendant in breaching this verbal contract, announced plans in 1973 to move outside of the state of New York to New Jersey where they would start the 1976 season playing inside the Meadowlands Sports Complex, located in East Rutherford, New Jersey.

12. The New York Giants' pro football organization was the first NFL franchise team to move away from their traditional fan base city location, thereby breaching the verbal contract that was binding with the United States Congress, and an economic obligation with the plaintiff (fan). As a result of this verbal covenant that was spoken to Congress, which directly specified what would not happen (no team movements), if the league was

granted a limited antitrust exemption, instead automatically turned into a restraint of trade with the plaintiff and the Giants' New York fan base, where the New York Giants were originally situated. It is a fundamental principle by law, in order to create a binding contract, which the law and courts will recognize and enforce, there must be an exchange of consideration between the parties (NFL/Congress) made, or 'reciprocal undertaking'. Consideration is something of value received by a promisor—the National Football League—from a promisee—Congress, in the form of a right, interest, or benefit, which in this civil case involves the granting of an antitrust exemption from Congress that NFL Commissioner Pete Rozelle petitioned the United States Congress for in 1966 (see Wood v. Lucy Duff-Gordan 222 NY 88 (1917). By verbally petitioning for this benefit and the subsequent breach of the agreement, the NFL and New York Giants ownership—motivated principally by economic gain and no regard for their traditional fan base—boldly defied a prohibition of section 1 of the Sherman Act related to restraints of trade, and crossed interstate lines three times by relocating to the state of Connecticut, back to New York, then to New Jersey, where they presently play their home games and represent the National Football League. The NFL, however, made no repercussions over the illegal restraint of trade movements, which occurred while the plaintiff(fan) resided just over three hours away from the New York Giants' original home—Shea Stadium—when he was a resident living in Pennsylvania during the '70s. While these illegal franchise movements were occurring, the plaintiff asserts that he had no knowledge of the Sherman Act then and the provisions in the act that were being violated at the time. The plaintiff only recently discovered by piecing together information over time, that Federal Trade Commission and Commerce and Trade statutes were breached along

4

13. with fraudulent concealment as of Jan. 2008. In Wood v. Carpenter, 101 U.S. (1879), the Supreme Court stated that a plaintiff must fully allege a fraudulent concealment in order to avoid summary judgement based on the bar of the statute of limitations. The allegation, therefore must set forth (1) the nature of the transaction (contract); (2) the time of discovery, mentioned; (3) what the discovery is, mentioned; and (4) why it was not made sooner, mentioned. The plaintiff alleges that acts of fraudulently concealing NFL antitrust violations occurred initially between 1973-1976 when the New York Giants were crossing interstate lines illegally in prohibition of the Sherman Act to re-locate—Connecticut, back to New York, and finally New Jersey; then during the Oakland Raiders v. NFL—(1980-fall of 1981)—when an orchestrated court litigation conspiracy played itself out off camera, to absolve the National Football League from any future antitrust liability and pave the way for franchise team owners move their teams to other markets in the United States until they got the type of football stadiums at taxpayers' expense, Al Davis, owner of the Oakland Raiders was chosen to be the savior for the League during Commissioner Pete Rozelle's plot to maneuver around the existing antitrust laws in order to make the National Football League his envisioned sports organization. But to do this, he had to first (1) petition Congress for a limited antitrust exemption prohibiting monopolies. He accomplished this by falsely appealing to Congress and the public, by stating that if the NFL was granted the exemption no teams would re-locate out of their existing markets—which later turned out to be a lie. Secondly, after receiving the antitrust exemption from Congress, he had to somehow "conceal" or wipe his hands clean from that lie, and do soon after, before an antitrust lawsuit from an angry former New York Giant's fan went public. What better way to do this then to employ one of his own NFL franchise member (single entity) team owners, Al Davis to

challenge the antitrust laws and make them work for the National Football League's interests....Your best defense is a good offense, and your best offense is a good defense. The plaintiff alleges the whole plan of allowing NFL teams to be able to move from city to city and for the NFL to escape antitrust liability, centered on when Al Davis, in "the plan," filed an antitrust lawsuit in restraint of trade against the league, claiming they would not let him move his franchise to Southern California where he could maximize his revenues in another fan base market of another team—the Los Angeles Rams, and to imply that the League and owners are "separate legal entities"—which the blame could be cast on the New York Giants moving on their own and that the National Football League had nothing to do with it, being an alibi. On Nov. 6, 1981, a court ruled that the National Football League could no longer prevent their franchise team owners from moving to city to city just as scripted. While franchises were now free to pack up and leave their traditional fan base fans and cities, the initial Sherman Act violations of restraint of trade remain (concealed) and (unjustified) before this ruling was made—1973-1976—and are now swept under the carpet. The plaintiff claims these violations have not been dealt with and are still under Title 15 of Commerce and Trade Chapter 1 section 1 jurisdiction (illegal restraints of trade). The defendants' silence of not stating that these violations did in fact happen, manifests fraudulent concealment. Similar to the plaintiff's "cookie jar conspiracy," the violaters stole from the jar, then washed their hands of the chocolate morsels which had marked them. There was no way for the mother to find out if anyone had raided the cookie jar until some of the ingredients, later that night, had dribbled from their mouths and on to their white pillow cases. She discovered the crime was concealed because the evidence was in their mouths. Likewise, the violations are still seared into the consciousnesses of the defendants and concealed on the tips of their tongues. See (Rosenthal v. Walker, 111 U.S. 185 190 (1884) fraudulent concealment.

6

14. In Bates v. Preble 151 U.S. 149 (1894), the U.S. Supreme Court declared that if a fiduciary relationship is present, (NFL with Congress) and economic obligation with plaintiff, silence on the part of the party against who the cause of action would lie, is sufficient concealment. The NFL never broke silence that they breached their contract with the United States Congress / economic obligation with plaintiff, and allowed the New York Giants to leave the state of New York to set up their home base in another state—Connecticut for two years, then New Jersey, in a restraint of trade with the plaintiff, as mentioned. Regardless of the plaintiff's "conspiracy theory," the Court declared if an act restrains interstate commerce, it is immaterial with what intent it may have been done (United States v. Trans Missouri Freight Asso. 166 U.S. 290, 341). This reinforces that it is therefore the acts done and not the conspiracy to do them, which should be the essence of a civil action (Allied Equipment Corp. v. Litton Saudi Arabia Ltd.). Additionally, when a contract, agreement, or arrangement of any kind is challenged as a combination in restraint of trade or commerce, that the courts shall look at the form of the agreement, and if it appears on its face to have had a necessary and direct result of restraining commerce, no inquiry into the intention or motives of the parties is requisite (U.S. v. Joint Traffic Asso. 171 U.S. 43 L ed. 259). Any combination for the purpose of avoiding the effects of competition in interstate (the state of New York—the Giants traditional fan base) or international commerce is within the prohibition of the Sherman Act (193 U.S. 197, 302 U.S. v. Trans-Missouri Asso. 166 U.S. 290). As a monopoly of the pro football market in the United States, the NFL abused their antitrust exemption to violate precepts in the Sherman Act initially, along with their franchise member team the New York Giants as an accessory to the violations. Even if the NFL never conceded that a contract was ever made with Congress that no teams would re-locate and 50,000 seat stadiums were sufficient for pro football's needs

7

spoken by Commissioner Pete Rozelle, (Reg. v. Murphy, 8 Car. & P. 397) states that it is not necessary in order to bring a combination or conspiracy within the operation of the Sherman Act, that the members bind themselves each with the other to do the acts alleged to be in a restraint of trade. It has always been held to be enough that they act together in pursuance of a common object (franchise relocations, the opposite of what Commissioner Rozelle said would not happen if given the antitrust exemption from Congress); an agreement or contract in the technical sense is not at all essential. The acts themselves revealed the violations. The National Football League's goal after their merger with the American Football League, and given their antitrust exemption, was to expand anywhere, so long as their lust for money and power was satisfied.

15. The Supreme Court in (United States v. Joint Traffic Asso. 171 U.S. 505) stated that the words 'in restraint of trade or commerce,' as used in the antitrust act are not confined to unreasonable or total restraints only, but extend to any and all direct restraints of trade or commerce if it is unreasonable or partial and that this rule applies to restraints upon individuals—the plaintiff, and private corporations—his corporation, West Coast Sports & Entertainment—after the fact that fraudulent concealment was discovered in Jan. of 2008.

16. Apart from this cover-up, the NFL, their subsidiaries Reebok, NFL Properties, and NFL Films have knowingly been marketing a fraudulent generic de facto secondary meaning trademark—Oakland Raider—for over four decades, which by law should not have transferred exclusive trademark rights to a corporation for marketing in commerce. On March 31, 2004, the National Football League ended their trademark license agreement with the Raiders, who had a license agreement with their subsidiary NFL Properties from the time that the Oakland franchise merged with the National Football League. The plaintiff alleges that the NFL disregarded their duty to provide quality checks

8

of their member teams' trademarks and have deliberately and willfully allowed fans of the Oakland Raiders to be deceived as well as the rest of the public in print, television, and NFL Properties pro football merchandise bearing the generic de facto raider. The Oakland Raiders' various lawsuits, and trademark civil action in particular, during "The Paul Tagliabue Era,"-- the new NFL commissioner succeeding Pete Rozelle in 1989-- heightened considerably while the Raider franchise was re-located to Southern California. The plaintiff claims that with the changing of the guard—after the "quasi restraint of trade conspiracy was pulled off—promises from Commissioner Rozelle may not have been fulfilled by his replacement. As differences quelled into the 21st century, on March 4, 2004 the NFL terminated their trademark license agreement with the Raiders after realizing that they may be liable for decades of fraudulent advertising worldwide. The plaintiff was irreparably harmed by the discovery in the Lanham Act Title 15 Commerce and Trade Chapter 22 sections 1120, 1125, 1052 (a) (e) and 1064 paragraph 3 that this is legally the case. The plaintiff was awarded a much stronger copyright reproduction of the trademark in Sept. of 2005 as proof that the trademark the National Football League has been knowingly marketing has been a generic de facto secondary meaning mark that should not have been given trademark rights and marketed. They chose to instead deceive the public and hinder the Oakland Raiders' merchandise sales of their fraudulently advertised trademark team, and at the same time exposed their subsidiaries Reebok Inc., NFL Films, and NFL Properties to trademark liability, because of their neglected duty to perform quality trademark checks of their franchise member team's logos before marketing them, through NFL Properties, and on network television. By the fact that this has been allowed to continue for decades, exposes the National Football League's modes of operation that pertain to unfair business practices and deceiving the public.

17. In February of 2008, an on-going congressional investigation into the National Football League's business practices were disclosed to the public and members of the Senate Judiciary Committee, namely Sen. Arlen Specter (R-PA.), in which a fraudulent unfair competition scheme was divulged to the American public, which had previously and inconspicuously taken place over a five year period between 2002-2007 with the National Football League's knowledge. Evidence from this investigation was intentionally destroyed to conceal acts of impropriety.

## DEFENDANTS' VIOLATION OF THE
## FEDERAL TRADE COMMISSION ACT

18. Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. 45(a), prohibits deceptive acts or practices in or affecting commerce. The Clayton Act of fraudulent concealment encompasses this act.

## DEFENDANTS' VIOLATION OF THE CALIFORNIA
## CONSUMER LEGAL REMEDIES ACT

19. The California Consumer Legal Remedies Act (CLRA) (Cal. Civ. Code 1750 et seq.) prohibits vagueness, unfair business practices, and deception by declaring unlawful "methods of competition and unfair or deceptive acts or practices undertaken by any person (or corporation) in a transaction intended to result or which results in the sale or lease of goods or services (professional football) to any consumer.

20. For purposes of this civil action, services implies the marketing of the National

10

DEFENDANTS' DETAILED VIOLATIONS OF THE
FEDERAL TRADE COMMISSION ACT

I.     TITLE 15 COMMERCE AND TRADE CHAPTER 22—TRADEMARKS

       THE LANHAM ACT

II.    COMMERCE AND TRADE 15 USC SECTION 53(A)

       FALSE ADVERTISEMENTS, INJUNCTIONS, RESTRAINING ORDERS

III.   TITLE 15 COMMERCE AND TRADE CHAPTER 1 SECTION 1

       ILLEGAL RESTRAINTS OF TRADE

IV.   COMMERCE AND TRADE SECTION 12

       ANTITRUST LAWS

V.     4 CLAYTON ACT 15 USC 15—SUITS BY PERSONS INJURED

VI.   14 CLAYTON ACT 15 USC 24—WHEN CORPORATIONS VIOLATE PROVISIONS OF ANTITRUST LAWS; LIABILITY OF DIRECTORS AND AGENTS OF CORPORATION.

VII.   16 CLAYTON ACT 15 USC 26—INJUNCTIVE RELIEF FOR PRIVATE PARTIES.

VIII.   15 USC 57(B) COURT JURISDICTION TO AUTHORIZE RELIEF.

Football League, their (single entity) member teams, team logos, merchandise bearing franchise logos, etc., of which the National Football League committed numerous deceptive and unfair business practices, and violated established Federal Trade Commission and Commerce and Trade statutes.

      COUNT ONE- Combination restraint of trade in the sanctioning
            of cities to market professional football:
            Conspiracy to restrain professional football in
            sanctioned cities of the United States, deemed to be
            within the prohibition of chapter one and three of the
            Sherman Act.

21. The plaintiff re-alleges that the National Football League and franchise member owners acted in combination restraint of trade to withhold professional football in sanctioned cities where the NFL had already established franchises, beginning with the illegal movements of the New York Giants in 1973-76, in violation of Title 15 Commerce and Trade chapter 1 section 1 (illegal restraint of trade), and 14 Clayton Act 15 U.S.C. 24 (liability of directors and agents of corporations in violating antitrust laws).

      COUNT TWO- Combination restraint of trade in the sanctioning of
            cities to market professional football: Conspiracy
            to restrain professional football to the irreparable harm
            of the plaintiff.

22. The plaintiff re-alleges that he was irreparably harmed as a result of the deceit and and violations of the antitrust statutes, which the defendants committed.

      COUNT THREE- Combination restraint of trade in the sanctioning of
            cities to market professional football: Conspiracy
            to restrain professional football (after facts discovered,
            Clayton Act of Fraudulent Concealment) to the
            irreparable harm of West Coast Sports & Entertainment
            Inc.

## COUNT FOUR- Fraudulent Advertising

23. The plaintiff alleges that the National Football League committed fraudulent advertising by deceptively marketing one of its franchise member team's deceptive trademarks (Oakland Raiders) in print, television, merchandise sales, live venues, and through their marketing affiliates NFL Properties, the NFL Network, Reebok Inc., NFL Films, and other television network media companies, which is in fact a fraudulent generic de facto secondary meaning trademark, which by the Lanham Act is generic, deceptive and should not have been given any trademark rights in commerce and trade.

## COUNT FIVE- Fraud Based on Bad-Faith Promise

24. The plaintiff re-alleges irreparable harm by the National Football League by their league commissioner Pete Rozelle, in that he a.) promised if the National Football League was granted an antitrust exemption from Congress, that none of the existing 23 teams in the league, beginning in 1966, would relocate from their traditional franchise cities, including the New York Giants. b.) at the time the commissioner made the statements he did not intend to keep them based on the acts of the member team New York Giants' breach of the contract c.) Commissioner Rozelle made the statements with the intent that Congress and the plaintiff rely on it. d.) The plaintiff was irreparably harmed as a result of his reliance on the fraudulent statements.

## COUNT SIX- Fraud Based on Innocent Misrepresentation

25. The plaintiff re-alleges that the National Football League, by their league commissioner Pete Rozelle made a.) an innocent misrepresentation of material facts; b.) the representation was made in connection with the making of a contract with the United States Congress and an economic obligation with the plaintiff, by the defendants. c.) the representation was false when it was made; d.) The plaintiff would not have entered into the economic obligation if the defendant had not made the representation and this civil suit would not have been filed; e.) Plaintiff experienced a loss of team and trust with the National Football League as a result of the innocent misrepresentation; and f.) Plaintiff was irreparably harmed and his loss benefited the defendants' motives.

12

### COUNT SEVEN- Fraud Based on Failure to Disclose Facts (Silent Fraud)

26. The plaintiff re-alleges that the National Football League represented by their commissioner Pete Rozelle and co-defendant New York Giants a.) failed to disclose the true facts that was the intent of the National Football League and New York Giants to re-locate out of their traditional fan base cities; b.) the defendants had actual knowledge of the facts c.) the defendants' failure to disclose the facts caused the plaintiff to have a false impression after the results; d.) When the defendants failed to disclose the facts, they knew the failure would create a false impression; e.) When the defendants failed to disclose the facts, the defendants intended that the plaintiff rely on the false impression; f.) Plaintiff relied on the false impression that the New York Giants would stay in New York and that no team relocations would occur; and g.) Plaintiff was damaged as a result of the National Football League's deception and fraud.

### COUNT EIGHT- Fraud and False Statements

27. The plaintiff re-alleges that fraud and false statements were given to members of the United States Congress by the National Football League, represented by NFL Commissioner Pete Rozelle, that none of the existing 23 teams in the League, which included the New York Giants, would re-locate from their traditional franchise locations, and that 50,000 seat stadiums were sufficient for pro football's needs in 1966.

### COUNT NINE- Conspiracy to Defraud the Government

28. The plaintiff re-alleges that the National Football League, represented by NFL Commissioner Pete Rozelle conspired to defraud the United States Government by deliberately giving fraudulent statements to members of The United States Congress in 1966.

### COUNT TEN- Tortuous Interference With an Economic Obligation

29. The plaintiff re-alleges the National Football League, represented by Commissioner Pete Rozelle was damaged by a tortuous interference with an economic obligation, when the defendant New York Giants re-located away from the state of New York to Connecticut, back to New York, then to the state of New Jersey, while the plaintiff was living in Pennsylvania during the '70s disenfranchising the plaintiff (fan).

13

COUNT ELEVEN- Advertising Services With Intent Not to Sell Them
as Advertised to the Public. (CA. Legal Remedies Act)

30. Plaintiff re-alleges that the National Football League, represented by Commissioner Pete Rozelle falsely advertised services of providing professional football to fans in California with a promise that none of the league franchises would re-locate to other geographic areas in the United States, based on statements given to members of the United States Congress that became a matter of public interest.

COUNT TWELVE- Representing that a transaction confers a remedy, which it
actually does not have, which is prohibited by law.(CLRA)

31. The National Football League represented by commissioner Pete Rozelle stated that if an antitrust exemption was not granted to the league, that without it franchise moves and failures would occur within a matter of years. Franchise moves occurred, beginning with the New York Giants in 1973 with the exemption granted to the league from the United States Congress.

COUNT THIRTEEN- Representing that a consumer will receive an economic benefit
if earning of the benefit is contingent on the NFL first
receiving the antitrust exemption. (CLRA)

32. The National Football League, represented by Commissioner Pete Rozelle, Committed fraud after receiving the antitrust exemption from Congress knowing before hand what was going to take place; the New York Giants illegal re-location from the state of New York--their traditional fan base area-- to the state of Connecticut, and finally New Jersey.

COUNT FOURTEEN- Misrepresenting the authority of a representative to negotiate
the final terms of a transaction with a consumer. (CLRA)

33. The Commissioner breached an economic obligation with professional football fans from the United States including the state of California, when he made statements to members of the United States Congress that no teams would re-locate from their traditional fan base cities, and that 50,000 seat stadiums were sufficient for pro football's needs, as a contingency to receiving an antitrust exemption from them. The statements from the commissioner became a matter of public interest, and part of public law 89-800.

### COUNT FIFTEEN- Intentional Infliction of Mental Distress

33. After the statements that National Football League Commissioner Pete Rozelle gave to Congress were breached, beginning with the New York Giants illegal restraint of trade team re-locations, and the subsequent team relocations that occurred after the plaintiff returned from Europe after three years in the United States Army—1980-1983—there was a sense that more professional teams would be leaving their cities, after the Oakland Raiders moved to Southern California.

### COUNT SIXTEEN- Negligent Intentional Infliction of Mental Distress

34. Professional teams, after the Baltimore Colts left their traditional franchise city under the cover of darkness and snow, were re-locating more frequently for other cities to market professional football, leaving the plaintiff with a sense of loss and that somehow a conspiracy had been orchestrated.

### COUNT SEVENTEEN- Major Fraud against the United States

35. The plaintiff after piecing together facts in the fall of 2007, had come to the conclusion that professional football fans of the National Football League in the United States had been blackmailed by the popularity of the NFL, and were willing to pay exorbitant prices for football stadiums at their expense, and the National Football League's and franchise owners' benefit.

## PLAINTIFF AND CONSUMER INJURY

36. Defendants' violations of 5(a) 15 USC 45(a); 12(a) 15 USC 52(a); 15 USC 53(a); Title 15 Commerce and Trade 22—the Lanham Act—sections 1120, 1125, 1052(a) (e) and 1064 paragraph 3 fraudulent advertising: generic de facto secondary meaning trademark; Title 15 Commerce and Trade Chapter 1 section 1 (illegal restraint of trade prior to Nov. 6, 1981 new court ruling regarding NFL team movements, and fraudulent concealment) 14 Clayton Act 15 USC 24; 4 Clayton Act 15 USC 15; 16 Clayton Act 15 USC 26; and 15 USC 57(b) will continue to cause injury absent injunctive and other equitable relief.

## THE COURT'S POWER TO GRANT RELIEF

37. Section 13(b) of the Federal Trade Commission Act, 15 USC 53(b), empowers this court to grant injunctive and such other relief as the Court may deem appropriate, to halt and redress violations of the FTC Act. The Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including but not limited to, freezing of assets, and disgorgement of ill-gotten gains, to prevent and remedy injury caused by the defendants' law violations.

38. The above section of the Federal Trade Commission Act 15 USC 53(b), also empowers this court to grant injunctive relief and other such relief as the Court may deem appropriate for violation of the California Legal Remedies Act (CLRA) to halt and redress injury resulting from the defendants' violations of it provisions, including freezing of assets; disgorgement of profits; and other equitable relief.

16

PRAYER FOR RELIEF

39. WHEREFORE , Plaintiff DAVID R. FLOOD, pursuant to sections 13(b) of the Federal Trade Commission Act 15 USC 53(b) and the Court's own equitable powers requests that this Court:

1. Award plaintiff such injunctive and ancillary relief as may be necessary to avert plaintiff injury in the form of an interlocutory injunction that the National Football League re-schedule a pre-season game at Stockton, California's Amos Alonzo Stagg Stadium on August 23, 2008 between the New York Giants and Oakland Raiders—NFL FANTASY BOWL I—and that all monies collected from this game to go towards educational scholarships and feeding the homeless, prior to the plaintiff's September 18, 2008 meeting with the defendants' counsels.

2. Permanently enjoin defendants from violating all sections, statutes, and acts in this "amended complaint," including the illegal marketing of the fraudulent generic de facto secondary meaning trademark, after the pre-season game re-scheduled at Stagg Stadium.

3. An award of a new expansion team for the city of Sacramento, California including $2.5 billion U.S. dollars or an NFL owned stadium to settle compensatory damages and fraudulent concealment. The award of $25 million U.S. dollars to the plaintiff for punitive damages for all counts, fraudulent advertising, and fraudulent concealment alleged and proven in this "amended complaint".

Dated: June 26, 2008                                    Respectfully submitted,

David R. Flood (Plaintiff)
915 L. St. PMB-292
Sacramento, CA. 95814

(916) 607-6197

NFL FANTASY BOWL I
CONTACT SHEET
ATTACHED

18

UNIVERSITY OF THE PACIFIC CONTACT INFORMATION

JOE VELO: DIRECTOR OF STUDENT LEADERSHIP

PHONE: (209) 946-2233

FAX: (209) 946-2173

AND

PATRICK GIBLIN: PUBLIC RELATIONS DIRECTOR (TO THE MEDIA)

PHONE: (209) 946-2233

FAX: (209) 946-2173

NFL FANTASY BOWL I

AMOS ALONZO STAGG STADIUM, SATURDAY EVENING AUG. 23, 2008

3601 PACIFIC AVE.
STOCKTON, CA. 95211

PRE-SEASON
FANTASY SUPER BOWL MATCH-UP

# SUPER BOWL CHAMPS VS. NFC OR AFC WEST LAST PLACE TEAM